**IN THE UNITED STATES DISTRICT COURT**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**FOR THE DISTRICT OF COLORADO** 2020 SEP -3  PM 4: 56

## '20 - CV - 02690

JEFFREY P. COLWELL
CLERK

Civil Action No.          Rule 40.1  c ( 4 )

BY_____DEP. CLK

(To be supplied by the court)

### TATYANA MASKAEVA

_____, Plaintiff

v.

Portercare / Porter Adventist Health System

_____,

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

### EMPLOYMENT DISCRIMINATION COMPLAINT

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |

## A.     PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

**Tatyana Maskaeva      4996 South Quintero circle, Aurora CO 80015**
(Name and complete mailing address)

**(303)909-0182  Sevryuga4996@gmail.com**
(Telephone number and e-mail address)

## B.     DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   **Portercare/ Porter Adventist Health System / Porter Adventist Hospital**
(Name and complete mailing address)

**9100 East Mineral circle, Centennial CO 80112**
(Name and complete mailing address)

**(303) 290-6500**
(Telephone number and e-mail address if known)

## C.     JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

__x__   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.
(employment discrimination on the basis of race, color, religion, sex, or national origin)

__x__   Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

__x__   Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

__x__   Other: (*please specify*)  ____FMLA leave_____

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   TITLE VII  Discrimination

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire                          __x__ different terms and conditions of employment

____ failure to promote              ____ failure to accommodate disability

__x__ termination of employment        ____ retaliation

____ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

| | | | |
|---|---|---|---|
| ____ race | ____ religion | __x__ national origin | ____ age |
| ____ color | __x__ sex | ____ disability | |

Supporting facts:

1.  I am a plaintiff, 44 years old married woman, born and raised in Kazakhstan, which was a part of a former Soviet Union. Russian is my first language. I am in protective class, still proud  the US citizen. I consider myself a Russian /American.
    I was hired by Porter Adventist Hospital in March 2007. I was well qualified for my position, working as Certified Nurse Assistant in the 3N surgical, the toughest floor to work on.

2.  Between the years of 2007 and 2015 I've had two previous managers, who respected my hard work and my duties, necessary for performing tasks related to the patients care.  During all those years I've never been late to work, even in blizzards, heavy snow or black ice, ever. Based on my evaluation qualifications, performance reviews, many compliments and rewards from my managers, coworkers and patients, I was receiving pay increases and bonuses. Have not gotten any negative feedbacks, or written warnings. During my almost 20 years of work history I have never been fired, terminated, discharged or laid off.

3.  In 2015 Karen Young was appointed as a new 3N surgical manager. Since that the environment on the floor has become hostile and unhealthy. From very first days she started yelling at me, insulting in front of my coworkers, discriminating me because of my national origin, humiliating me for my strong Russian accent, making fun of my English.

*Additional  page for is  attached.*

*Additional  page for Claim One.*

## D.      STATEMENT OF CLAIM(S)

4.  She would call me: "Russian KGBst", Communist, Putinist.  The most frequent name she was calling me was a "Russian huskey", sticking out her tongue and barking like a dog.

5.   Then she started sexually harassing me. Short after she became a manager, she called me in to her office, pushed me hard against the wall, grabbed my breast and started touching my private parts. I could not believe the vulgarity coming from her. I was extremely shocked and shouted at her to stop that. There were many occasions where she tried to take me to an empty room during my work or isolate me from others with intentions of sexual misconduct.

6.  Also she was threatening me to throw me out Hospital if I will be ignoring her personal matters, or refuse to go out with her to the bar after work or be in the empty room with her.

7.  I could not take it anymore and decided to report Karen's behavior to HR I and also signed sexual harassment form.

8.  After this complaint to HR, Karen Young and her best friend Michelle Hesse, who was an assistant manager, began discriminating me even more. They would make fun of me. Now on
    - "Russian husky", "Russian communist ", "KGB agent" have become a normal practice for the staff to call me;
    - They intensely started tracking every step I made;
    - They would not let me to take a lunch break, drink coffee or water on the floor, even go to the bathroom; or go to my locker where I stored my prescribed by my doctor meds to take them on time.

9.  Other employees were not even close to being monitored as I was. They were able to take brakes throughout the day, drink whatever beverages they wanted, sit down while taking a vital signs, unlike me. They were able to choose their own vacation dates, while I was left with leftover dates after everyone had chosen what they wanted.

10.  Next day I stopped by HR once again to report Karen to be continuously harassing me sexually. I've been feeling emotionally stressed down, helpless and shocked.

11.  HR specialist Cathy Cox promised me that she will take care of my complaints and file a harassment form signed by me.

12. Soon, after Karen Young has been removed from the management position.

*Additional   page  is  attached.*

4

*Additional page for Claim One .*

## D.     STATEMENT OF CLAIM(S)

13.  When Jon Massey became our new manager, Michelle Hesse, Karen's best friend, remained holding assistant manager position. She was responsible for making work schedules. Discrimination against me has reached a new level.

14.  No CNAs was given more than 11 patients per shift, except for me. Michelle was forcing me to take care of 16 patients and be a sitter simultaneously. However, it was against  Porter hospital's policy:
   - According to the Porter Hospital's policy, maximum allowable number of patients appointed to one given CNA cannot exceed 11 patients per shift;
   - Also, being a sitter, while caring for other patients was not allowed, according to the policy.

15. I was opposing to accepting this schedule especially after one of the hospital's patient died in the prior week, because he was left unattended by a sitter, who, in turn left him caring for another patient. He was choked by the oxygen tube, wrapped around his neck. But Michelle keep saying, "You are strong as Russian bear, you will handle that".

16. Michelle was not letting me go on lunch some days. If she did, she would monitor me weather I was on time going out for lunch or back from it (that was happening with nobody else but me only). She was making fun of my accent frequently, adding that in Russia, workers were not given breaks at all.

17. Karen has not stopped harassing me. Whenever there was nobody around, she would stick out her tongue, moving it from side to side, making a circle motions with her fingers around her breast, insisting me to go out with her. I was refusing it, because I did not want to. The only thing I wanted was to have good working relationship with her and others.

5

## D.     STATEMENT OF CLAIM(S)

CLAIM TWO:   _Age discrimination in Employment Act, ADEA_

The conduct complained of in this claim involves the following: (*check all that apply*)

| ____failure to hire | _x_ different terms and conditions of employment |
| ____failure to promote | ____ failure to accommodate disability |

| _x_ termination of employment | ____ retaliation |

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

| ____ race | ____ religion | ____ national origin | _x_ age |
| ____ color | ____ sex | ____ disability | |

Supporting facts:

18.     All previous allegations are incorporated hereby.

19.     Plaintiff is in a protected class.

20.     Ironically new CEO for CENTURA HEALTH was appointed and Jonathan Massy as our manager same time in 2017. Drastic changes in staffing, everyone had been noticed among CNAs in particular.

21. Michelle mentioned that Jon intends to shrink the staff on the floor and does not want a secretary in the front desk anymore. Also she sad that he wants to replace floor staff to younger extended CNAs . Since they would be able in a front desk and still care for patients.

22.     Jon had transferred several senior CNAs, like Alethea Bowens to a virtual sitting position. About same another CNA, Buck Gale had quit, senior CNA Goluch Danuta was terminated, several young extended CNAs, ages between 19 and 25 stepped in on our floor.

23.     Frequently Michelle kept on repeating that I should start looking for a job, like above mentioned CNAs, giving me 16-20 patients. I was not getting any assistance from new young CNAs, as team working environment implies. Instead of ordering food or drink for the patient, who would ring bed alarm often, while I am away busy with my other patients, they were just keep calling my pager .

24. While I was approaching front desk to assist patient, I several times was witnessing how extended CNAs either played games on their personal phones ( though I was not allowed to have my personal phone with me at all time while I am on my shift.) or had their home work done(many were students) , instead of doing what they are supposed to do, like helping patients when I am at my busiest .

25.   Jon and Michelle was always protective of young CNAs, saying that they can do whatever they want, if they finish their duties, which was never applied to me.

*Additional  page  is  attached*

6

*Additional page for Claim Two.*

## D.   STATEMENT OF CLAIM(S)

26. Since I remained the only senior CNA on the floor, I constantly were asking Michelle to stop discriminating me and make young CNAs do their direct responsibilities. Alethea Bowens, the director, and even patients complained about their behavior to the manager and charge nurse .

27. Karen kept sexually harassing me, Michelle and Jon kept discriminating me.

28. In 2017, When Michelle assigned me 16 patients and being a sitter, she complained Jon, that I was not answering the phone and hiding from her, showing attitude. Based on Michelle's words, Jon, for the first time had given me bad performance review, ignoring all the positive reviews from my coworkers, patients.

29. He stated that all good reviews were comming from your friends, like Alethea Bowens, Danuta Goluch, Cody Smith. Yes we have had a good relationship at work, nothing more. And he was adding in a rude and aggressive manner "Do not argue this with me. I don't care what you say and don't go across…me, because I say so".
"I don't understand a word you are saying", he kept mentioning my heavy Russian accent and mock me for it. He had invalidated all the positive feedbacks that outweighed negative one. I was continually discriminated by him.

30. In February 15, 2017 I tried to explain Jon what happened 3 days earlier and how immensely hard I was working on Feb. 12, 2017, when Michelle assigned me 16 patients and being a sitter, but he would not listen, saying you have broken English and further was ignoring me.

31. I asked Michelle in a presence of Alethea, if I could work as virtual sitter, but she replied "No", "because of your strong accent nobody will understand you, adding " You better of looking  for another job already". Alethea was confused with that offensive answer as she has not been having an issues with my English all throughout almost 11 years of work with her .

32. Then I asked Jon same request and sad "If Amy has a strong Spanish accent, why can't I work there. But his answer was that he is hiring young and less expensive CNAs to work in the front desk or in virtual sitting room. Also he would smile repeating, "Why cannot you just quit and find a new job".

33. So Michelle kept on assigning me 18, 22 patients, prominently braking hospital's policy. I kept trying to get at least two assistants. Meanwhile many patients were neglected by RNs, who were not assisting their patients.

34. While I assisting my patients, I was called to another room, where patient was soaked in urine and stool. No RN or extended CNA would come there once within six hours to clean up even after feeding through leaky tube. Or they ignored moving a patient from side to side every two hours. Patient just could not call or speak for help.

35. Very exhausted I went to that patient to care for her. I also called nurse to assist me with moving that patient.

36. No any warnings to RNs and extended CNAs however have been issued for this of serious incident.

37.  I reminded Jon, that because of my back injury at work in 2010 I had to be cautious in doing heavy lifting etc, especially having 22 patients, he would not listen and ignore it.

38.   The discrimination and harassment by management staff has not stopped at this point.

## D.    STATEMENT OF CLAIM(S)

CLAIM THREE:   TITLE VII and Age discrimination in Employment Act, ADEA

The conduct complained of in this claim involves the following: (*check all that apply*)

____failure to hire                                  _x_ different terms and conditions of employment

___failure to promote                         ____ failure to accommodate disability

_x__ termination of employment         ____ retaliation

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race                 ____ religion              _x_ national origin              _x__ age

____ color              _x_ sex                       ____ disability

Supporting facts:

39. All previous allegations are incorporated hereby.

40. Plaintiff is in a protected class.

41. After my unjust performance evaluation, I went again to HR, specifically to the office of Deana Hernandez ( Senior HR generalist) to complain about abusing and discriminating me at work, harassment, unfair treatment by my manager Jon Massey, Karen Young and charge nurse Michelle Hesse. I made a report, describing, how unhealthy, unwelcomed and hostile work environment has become on our floor, specificaly for me, since Jon became a manager. Deana has recorded my claim about discrimination and harassment by above name people and everything I stated. Then I signed this document.

42. Next day Jon handed me a gift card in the amount of $10? I refused to accept it. Instead I kindly asked him for help to end discrimination and harassment against me. He, once again was stressed out how strong my Russian accent was and said that he does not have any more time to talk to me. It seemed liked Jon and Michelle simply did not care about improving the quality of care and safety for their patients on the floor.

43. Discrimination was continued despite my complaints to HR.

44. Since no action has been taken towards this problem resolution, I decided to meet with Marta Paulson, director, complaining about everything what has been happening to me in recent months, including my unfair performance evaluation as a result of an incident, which occurred on 2/12/17 and 3/19/17. Marta promised me to care of all this to be prevented from happening it again. That was just a lie. Nothing has changed.

*Additional page is attached*

8

*Additional  page  for Claim Three.*

**D.    STATEMENT OF CLAIM(S)**

45. I was still getting 14-16 patients in a given day, as extended CNAs would only get 5. I had been calling embarrassing names as before, talking trash about me behind my back, treating as second class person, never been getting help from young CNAs to carry or  move my patients.

46. I had struggled with completing computer test on time and asked Jon for help. But would not help me and became very mad at me.

47. Once again Karen tricked me to go check an empty room for "equipment", so she would quietly follow me and sexually harass me. That was making me embarrassed and angry.  She was saying that she loves Russian women because of their big breasts.

48. I brought it up to Marta Poulson and Melissa, the manager assistant. And finally they give her a warning but that did not stop Karen from sexually harassing me.

49. And because they were not allowed to let me go to locker room to take my meds on time for quite long period of time , that severely impacted my health.

50. Also right about this time around, my mother, who leaves in Sacramento, CA was going through leg amputation. I was very depressed about it. Jon new about that, however:

**D.    STATEMENT OF CLAIM(S)**
CLAIM FOUR:   TITLE VII and Age discrimination in Employment Act, ADEA

The conduct complained of in this claim involves the following: (*check all that apply*)

    ____failure to hire               **x**  different terms and conditions of employment

    ____failure to promote           ____ failure to accommodate disability

    **x**    termination of employment      **x**  retaliation

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

    ___ race          ____ religion         **x**  national origin      **x**   age

    ____ color         **x**  sex          ____ disability

    Supporting facts:

51. All previous allegations are incorporated hereby.

52. Plaintiff is a woman and in a protected class.

53. 5/30/17 when I was taking a patient to dialysis. All of a sudden, Jon, very loud shouted right behind my back and in front of my coworkers. "Hey! Where are you taking this patient? You Crazy Russian. I stood frozen there, confused and frightened to death. I want to see you in my office, he shouted. I could not move for a while but I realized that something terrible must have happened. He was going to give me written warning for nothing.

54. One day Jon called me in his office and asked me to sign "new rules" for 3N surgical CNAs. I refused to sign because after reading it I felt discriminated again. This document stated that CNA have to be able fluently speak, read, write, understand written instruction in English, to have proficient grammar, spelling, ability to utilize computer and keyboarding skills. Since I remained the only immigrant on the floor, I felt discriminated and depressed. Once signed in Jon could easily fire me, like they did to Danuta Goluch, CNA with 25 years of experience on the 3N surgical. But Jon insisted 5 times, warning me, if I refused to sign he would have a disciplinary action against me

55. The written warning (dated in June 1, 2017) given to me, was the first one ever, in 10 years. For what??? Just for patient's urine to be emptied on time? It was part of my job. I was not even been informed of a patient's urine to be retained, neither by the nurse, staff or anyone. Nobody on the floor has even mentioned this to me for 8 days.( "Incident has occurred on 05/23/17. I had not hurt my patient, I did not do any harm to her, I did nothing to be punished for especially, by Jon's written warning, as I knew he did it by purpose, to find a reason to fire me as he planned to do so after my complaints to HR about hostile work environment.

*Additional  page  is  attached*

*Additional  page  for Claim Four.*

**D.      STATEMENT OF CLAIM(S)**

56. I tried to explain the whole situation, that it was not my fault, but he replied, "It is not Russia, here you have to do what patient requested." But my patient was mentally impaired at that time, she couldn't adequately make any decisions. He added:" If you don't like it go back to "Home". He meant back to Putin's Russia.

57. Also he wrote false statement in the warning, things which never happened, he put wrong dates. Also Jon's cousin wrote false complaint about me in support him for allegations.

58. 06/13/17 I submitted grievance and discrimination form with Human Resources and HR initiated an ADR process as hospital's policy implied.

59. Until 08/30/17, I was not able to participate in my ADR due to my health condition.

60. Jon has left my FY17 Compensation statement on the front desk. Anna Dudley located it and was shocked, when she saw my pay rate which was $17.54. She shared this information with me, Jon, another extended CNA Ortega Samantha in particular and other extended CNAs. She told me  "I only get paid $12.50, you are getting much more than us, it's not fair, so you have to work more and harder and they all stopped helping me". They were just doing their home work and play with their phones.

**D.     STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM FIVE  :   Americans with Disabilities Act, ADAAA Discrimination.

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire                           **x**    different terms and conditions of employment

____ failure to promote                   **x**    failure to accommodate disability

**x**   termination of employment       ____ retaliation

____ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race              ____ religion           ____ national origin           ____ age

____ color            ____ sex                **x**   disability

Supporting facts:

61. All previous allegations are incorporated hereby.

62. My mother's leg amputation, constant manager's discrimination, Karen's sexual harassment and bullying Jon's frequent yelling at me, abuse from the staff, including Michelle Hesse: all of that caused an emotional distress. I started developing a terrible migraine, anxiety and sleepless nights and fatigue. I was not able to give proper care to my family upon returning home from work. After my days off I was feeling even more tired and simply were forcing myself go to work.

63. On 06/02/17 I had stress, terrible migraine and panic attack and my husband took me to my Physician's clinic. After hours of examinations, I've been diagnosed with panic attacks, major depression, anxiety. My doctor has prescribed me strong meds, therapy and hospitalization.

*Additional  page  is  attached*

12

*Additional   page for Claim Five.*

**D.     STATEMENT OF CLAIM(S)**

64. 09/06/17 I had another panic attack, so I called in sick on 09/07/17. On my sick day, Jon
    called my cell phone and left a message of an immediate meeting related to performance
    overview. My heart started pounding, elevating my blood pressure very high. My husband
    rushed me to the Parker Porter Hospital's Emergency Room.

65. On 09/12/17 Jon called me again and left a message in very demanding manner. I called him
    right back asking him to remove me from schedule, because I had urgent appointment with
    my doctor. But he insisted me to have a performance evaluation meeting. I've had severe
    anxiety and was under strong meds, so I could not hold an important meeting with Jon that
    time.

66. He was rising his voice at me over the phone although I was very sick. I replied that I would
    want to speak with Sondra Davis, VP of Centura's Human Resources first, because I was
    threatened to be fired soon for any little reason.

67. Jon told me to bring a doctor's statement about my mental issues and signed a consent form
    from an occupational nurse before he could place me on the schedule. They asked me why I
    was sick? I explained because of my medications from anxiety and panic attacks. My doctor
    had to prescribe me more dosage. Nurse sad that I could return to work, but if my symptoms
    worsened, I will need to take FMLA or Short disability.

**D.     STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM SIX:   __ADAAA  RETALIATION_____

The conduct complained of in this claim involves the following: (*check all that apply*)

_____ failure to hire                         __x__ different terms and conditions of employment

_____ failure to promote                _____ failure to accommodate disability

__x__ termination of employment    __x__ retaliation

_____ other: (*please specify*) _____


Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

_____ race              _____ religion            _____ national origin           _____ age

_____ color            _____ sex               __x__ disability

Supporting facts:

68. On the meeting with Deana Hernandes in her office on 08/14/17, when we were discussing FMLA leave for me and when she accused me of being liar and making up fake excuses to get FMLA, Ed Lowry ( HR manage) was witnessing our conversation. He  ignored my reaction and my health condition after I heard all that from Deana. He did not interfere or stop Deana from accusing me.

69. Instead , next day he sent me an email suggesting to start an ADR process ASAP. I was not able to come for meeting on 08/21/17 due to my panic attacks at work, caused by continued discrimination against me from Jon, Deana, Karen, even my coworkers, especially after my visit to HR on 08/14/17. Also Michelle has scheduled me three days in a row against my will. Although we have had a previous agreement with Martha, director, not to schedule me 3 days in a row without my consent, due my poor health condition.

*Additional   page is attached*

14

*Additional page for Claim Six.*

## D.    STATEMENT OF CLAIM(S)

70.  08/21/17 Michelle started monitoring me through virtual camera. I found out that from virtual sitter . She called me on work telephone she said : " Be very careful, I instructed to record your activities while you are in the room with a patient". I became anxious, I started panicking as I knew that those cameras are not intended for monitoring employees, but patients. I brought it up to Ed Lowry by email.

71.  Also I mentioned again about my intention to complain about job discrimination, sexual harassment from Karen. But he replied that this are two separate issues.

72.  Next, Jon called me in his office, calling me Crazy Russian and threatened me to fire me, because I complaint about him to HR manager, Ed Lowry.

73.  On 08/25/17 I was sent by my RN to the 4N floor to get a diaper, manager of that floor refused to give me one, yelling at me currently, because of total retaliation throughout the hospital started by my managers.

74.  On 08/30/17 I had an ADR meeting with Ed Lowery. He asked me what are my remedies were? I replied, that I could not work under Jon and Michelle's pressure anymore, because his constant discriminations against me, sexual harassment from Karen Young never stopped. So I'd like to be transferred either to another floor or to virtual sitter room.

75.  He refused me for any accommodations

76.  Ed Lowry has investigated a Jon's written warning. He agreed that the warning did not make sense, was unfairly given to you and that he intended to destroy it as soon as I sign a resolution form and shady agreement, which I did not understand.

77.  I refused to sign anything, demanding for thorough investigating all allegations against me, help in investigation and prevention of all the discriminations, retaliation and harassment against me in future, help in accommodations. That were my remedies, I stated.

78.  He concluded then. " I cannot help you" and forwarded ADR process to the next step, which was the meeting with  Centura 's VP of Human Resource .

79.  She email me with the same question: " What are your remedies?" I repeated the same ones as I would tell Ed Lowry. That was the last conversation in an ADR process  before they fired me.

## D.   STATEMENT OF CLAIM(S)

CLAIM SEVEN:   <u>FMLA INTERFIERENCE</u>

The conduct complained of in this claim involves the following: (*check all that apply*)

| | |
|---|---|
| ___ failure to hire | ___ different terms and conditions of employment |
| ___ failure to promote | ___ failure to accommodate disability |

__x_ termination of employment     ___ retaliation

____ other: (*please specify*) _____ <u>FMLA INTERFIERENCE</u>

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

| | | | |
|---|---|---|---|
| ___ race | ____ religion | _____ national origin | ____ age |
| ___ color | ___ sex | ___ disability | |

Supporting facts:

80. On 08/11/17 I was called Matrix, asking for FMLA. On 08/14/17 Deana called me into her office to ask a reason for my FMLA leave. Then she accused me of deception and fraud, accused me of making the story up to avoid an ADR process. I explained that I must go to my mother, as soon as possible, as she needed my help, after her leg was amputated.

81. However, Deana lied instead, about the fact that my mother's doctor did not sign the proper forms to request FMLA. He did, in fact, faxed all the supporting documents to request FMLA to the MATRIX on 08/14/17.

82. I started crying, panic attack has started but she added that I have deserved a written warning. She kept on saying that she did not believe me about discrimination and harassment, abuse and bulling, also suggested me to quit my job.

83. 08/19/17 I heard my coworkers were taking behind my back, calling me crazy Russian and Russian liar. I started crying and couldn't stop it. They were laughing and cursing me. Around 2:45 Pm, Charge nurse floated me to 5N floor, without letting me take a lunch break.

84. On 09/18/17 I called MATRIX many times to make sure they sent a form to my doctor to be signed. Matrix promised to us they would send it to him, no worries. But they never did. Because Matrix have been told by Jon to stretch out time. Matrix intentionally kept changing the dates, blaming for my doctor( same story as they did with my mom's FMLA). Employer and Matrix knew of my doctor's appointment date, which was 9/28/17 ( Where my doc would have signed an FMLA related form). So they fired me on 09/27/17, one day earlier, while being on suspension. On 09/29/17 Jon sent me termination letter, provided with an attachment with fabricated statement, false dates and false facts about me.

*Additional   page is attached*

16

*Additional page for Claim Seven.*

**D.      STATEMENT OF CLAIM(S)**

85. In September 14, 2017 I experienced excessive migraine and visited my doctor. My symptoms had worsened so I needed more meds or higher dosage.

86. On 09/15/17 when I was back to work, Jon took me in his office and asked about making day and time for performance evaluation. I ask Jon, "How come my previous manager, Jennifer wasn't urgent with my performance, when I had my back injured in 2010?" I had one two months past dead line, because she was very kind and told me not to worry about, take care of yourself, feel better first. He was furious called crazy Russian. My blood pressure went up, I could not breathe, I felt terrible head ache and my coworkers have taken me to ER on the first floor.

87. Deana called Michelle on 08/14/17 after our discussion and told her that I was pretending of being unhealthy, having panic attack. She suggested Michelle to remove me from work that day.

88. When I came to work on 08/19/17, I called MATRIX to check the status on weather I was approved for FMLA but they denied. I was depressed and anxious from worrying. So I called my mom to find out of what happened to a medical-approved form signed by her doctor. She answered that her doctor has faxed the signed form several times to the number provided by MATRIX. And he was confused why it was taking so long to approve FMLA.

89. My mother's doctor faxed again the form to the number provided, but MATRIX stated that they did not receive it. I knew for sure that was a lie ( I have a proof). They were stretching time by purpose to exceed a dead line. Jon and Deana had an interference In MATRIX's decision to deny FMLA request.

90. I had an appointment with my doctor, scheduled on 09/28/17 and I told Jon :" I will ask my doctor to sign FMLA form for my illness then". He became angry, yelled at me , called me you crazy Russian and said that it's too late to play doctors and forms. I will fire you because you refused to sign ADR and did not take a performance evaluation.

91. 09/15/17 Jon was saying that we still have time anywhere from two weeks to one month to do a performance evaluation. However all of a sudden (like something extra ordinary happened) he has become furious and angry, insisting me to sign an ADR form, to do a performance evaluation ASAP, despite my poor health and mental illness.

92. 10/19/17 I was denied an FMLA and short disability.

17

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM EIGHT:   __FMLA RETALIATION_____

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire                   ____ different terms and conditions of employment

____ failure to promote            ____ failure to accommodate disability

__x__ termination of employment     __x__ retaliation

____ other: (*please specify*)   __FMLA RETALIATION_____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race                ____ religion            ____ national origin           ____ age

____ color              ___ sex                ___ disability

Supporting facts:

93. All previous allegations are incorporated hereby.

94. I called in sick on 9/16/17 because my anxiety had worsen.

95. On 09/18/17 I came to work, but Jon asked me to call Occupational Health Department to clear up my eligibility to work. They sad I am good to go.

96.  I had meeting with Jon, Ed Lowry, Deana, Marta Paulson. Deana said:'' Tatyana, Why don't you just quit and look for another job" then in front of everybody she started reading my grievance about discrimination, harassment, abuse against me. Jon added that I lost my CNA skills (that was not true) so we need more younger CNAs , mainly students. He kept pointing on my strong Russian accent, I voiced that I was not comfortable working with my manager, begging to properly accommodate me. Deana was calling me a liar again, adding that if I cannot work with manager, then it is my problem and then I should quit and leave. Why do we have to offer you an accommodation.

*Additional   page is attached*

18

*Additional page for Claim Eight*

## D.   STATEMENT OF CLAIM(S)

97.  They suspended my badge and sent me home. They instructed me not to call the manager or the staffing office. HR will call you. Right then I felt anxious, my heart started pounding, because my blood pressure exponentially went up, I could not breathe. Ed Lowry walked me to Emergency Room downstairs, third time within one week.

98. After ER, I applied for a short term disability, as an ER doctor recommended. He also sent a note to my doctor requesting an appointment with him as soon as possible. The only available date was 09/28/17.

99. 09/19/17 Ed called me home, left a voicemail. I was not able to speak to anybody, instead I texted him saying that I am not feeling and needed to see doctor urgently. He examined me and wrote a letter to excuse me from work.

100.    On 9/22, 9/25 and 9/27 we were calling the HR, leaving a voicemail, no one returned my call. I was able to speak to Ed though on 09/25 telling him that I had a statements from my both doctors about my poor mental and Physical conditions, caused by hostile work environment  and that how badly I needed either FMLA or short disability, which I deserved. He replied that is too late and hung up the phone.

101.    On 09/22/17 My husband and I went to Centura Health's corporate office to speak to Rachel Marenin , the HR specialist, complaining about my situation. They just gave me a hot line number, promised to have Sondra Davis to contact me but she never did.

102.    They fired me in an unprecedented manner. They did not even allow me take my belongings from my locker in the brake room. They did not pay while I been on suspension.

103.    My employer has left me without any money and insurance but with bunch of medical bills. I have been without my strong medications for more than three months, which greatly impacted my already poor health due to Porter, I just could not afford them, I had no insurance. My family and I suffered a lot, we had no money to pay bills, I could not see my doctor for months. My mom suffered without my help, as she lost her leg and strength. I have been discriminated, harassed and abused badly by my employer. My former employer refused for FMLA due to my mom's illness. Then they made me physically emotionally and mentally ill and disabled (I've been diagnosed with PTSD).Porter has refused for FMLA for myself. Porter has denied a short disability for me. They refused for my accommodation. Hospital staff treated me as third class person, for my hard and honest work for more 10 years on the same floor. Hospital kicked me out of hospital like a street dog, pursuing personal ambitions and thinking about corporate profit. I am confident that justice will prevail. God Bless America.

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

     **x**    Yes  (***You must attach a copy of the administrative charge to this complaint***)

     ___ No

Have you received a notice of right to sue? (*check one*)

     **x**    Yes  (***You must attach a copy of the notice of right to sue to this complaint***)

     ___ No

**F.**    **REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

Additional paper is attached.

**G.**    **PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Tatyana Maskay*
(Plaintiff's signature)

09 / 03 / 2020
(Date)

(Form Revised December 2017)

## REQUEST FOR RELIEF

**Plaintiff requests the following relief:**

- Economic loss
- Punitive damage. Maximum allowed by law
- Compensation for a mental harm. Maximum allowed by law
- Compensation for emotional pain and suffering. Maximum allowed by law
- Non - pecuniary damage
- Make the hospital to hire me back and restore my good name.


Date: 09/03/2020      _Tatyana Nash_
                                    ( Plaintiff's Original Signature)

                                   4996 S. Quintero cir.
                                    ( Street Address )

                                   Aurora, CO 80015
                                    ( City, State, ZIP )

                                   (303) 909 - 0182
                                    ( Telephone Number )

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 541-2018-00027 |

Colorado Civil Rights Division — and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Tatyana A. Maskaeva | (720) 257-1402 | 1976 |

Street Address: 4996 S. Quintero Circle, Aurora, CO 80015    City, State and ZIP Code

**RECEIVED**

**OCT 30 2017**

**EEOC DENVER FIELD OFFICE**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PORTER ADVENTIST HOSPITAL | 500 or More | (303) 778-5631 |

Street Address: 2525 S Downing St, Denver, CO 80210    City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address:    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05-22-2017    Latest: 09-27-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above mentioned respondent in May 2007, as a Certified Nurse Assistant. In 2015, I began to be subjected to unwelcomed advances from a supervisor. I rejected the advanced and reported the behavior to Human Resources at that time. HR informed me that they would take action but soon after the behavior worsened at work. I began to be harassed due to my national origin by the supervisor and her fellow supervisors. Due to the harassment at work I required medical attention in September 2017. Due to these issues I requested FMLA and Short term disability, which were both denied. I was subsequently terminated on September 27, 2017.
I believe I have been discriminated against because of my sex (female) and retaliated against for opposing discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, as amended. Furthermore, I believe I have been discriminated against because of my age (41) in violation of the Age Discrimination in Employment Act of 1967, as amended. I am disabled as defined in the Americans with Disabilities Act of 1990, as amended ("ADAAA") and I was discriminated against because of my disability in violation of the ADAAA.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Oct 30, 2017 *(Date)*    *Tatyana Mask* (Charging Party Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Tatyana A. Maskaeva**
      **4996 S. Quintero Circle**
      **Aurora, CO 80015**

From: **Denver Field Office**
        **303 East 17th Avenue**
        **Suite 410**
        **Denver, CO 80203**

[ ] *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **541-2018-00027** | **Christopher D. Padilla,**<br>**Supervisory Investigator** | **(303) 866-1336** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Christopher
Padilla

Digitally signed by Christopher Padilla
DN: cn=Christopher Padilla, ou=Denver Field
Office, ou=EEOC,
email=Christopher.padilla@eeoc.gov, c=US
Date: 2020.06.10 08:38:11 -06'00'

for

Enclosures(s)

**Amy Burkholder,**
**Director**

*(Date Mailed)*

cc:  **Mel Sabey**
     **HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.**
     **Writer Square**
     **1512 Larimer Street, Suite 300**
     **Denver, CO 80202**

     **Jennifer Robinson**
     **ROBINSON AND ASSOCIATES LAW OFFICE, LLC**
     **3300 S. Parker Road, Suite 330**
     **Aurora, CO 80014**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     —     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** 2 years (3 years) **before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     —     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request** within 6 months of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.