**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02690-KLM

TATYANA MASKAEVA,

       Plaintiff,

v.

PORTERCARE/PORTER ADVENTIST HEALTH SYSTEM,

       Defendant.

---

## ANSWER TO COMPLAINT

---

      Defendant, Portercare/Porter Adventist Health System ("Porter"), through undersigned counsel, respectfully submits its Answer to Plaintiff's Complaint.

## CLAIM ONE:
### TITLE VII Discrimination

*termination of employment, different terms and conditions of employment: national origin, sex*

1.     I am a plaintiff, 44 years old married woman, born and raised in Kazakhstan, which was a part of a former Soviet Union. Russian is my first language. I am in protective class, still proud the US citizen. I consider myself a Russian /American. I was hired by Porter Adventist Hospital in March 2007. I was well qualified for my position, working as Certified Nurse Assistant in the 3N surgical, the toughest floor to work on.

**ANSWER:**  Porter admits that Plaintiff was hired in March 2007 and that she worked as a CNA in the 3N surgical floor. Porter denies that she was qualified for her position at all times relevant to the dispute. Porter denies that her floor was as a rule the toughest floor to work

on. With regard to the remaining allegations in Paragraph 1, Porter lacks sufficient information to admit or deny them and therefore denies them.

2.      Between the years of 2007 and 2015 I've had two previous managers, who respected my hard work and my duties, necessary for performing tasks related to the patients care. During all those years I've never been late to work, even in blizzards, heavy snow or black ice, ever. Based on my evaluation qualifications, performance reviews, many compliments and rewards from my managers, coworkers and patients, I was receiving pay increases and bonuses. Have not gotten any negative feedbacks, or written warnings. During my almost 20 years of work history I have never been fired, terminated, discharged or laid off.

**ANSWER:**  Porter denies that Plaintiff never received any negative feedback or written warnings prior to 2015. With regard to the remaining allegations in Paragraph 2, Porter lacks sufficient information to admit or deny them and therefore denies them.

3.      In 2015 Karen Young was appointed as a new 3N surgical manager. Since that the environment on the floor has become hostile and unhealthy. From very first days she started yelling at me, insulting in front of my coworkers, discriminating me because of my national origin, humiliating me for my strong Russian accent, making fun of my English.

**ANSWER:**  Porter denies the allegations in Paragraph 3.

4.      She would call me: "Russian KGBst", Communist, Putinist. The most frequent name she was calling me was a "Russian huskey", sticking out her tongue and barking like a dog.

**ANSWER:**  Porter denies the allegations in Paragraph 4.

5.      Then she started sexually harassing me. Short after she became a manager, she called me in to her office, pushed me hard against the wall, grabbed my breast and started touching

my private parts. I could not believe the vulgarity coming from her. I was extremely

shocked and shouted at her to stop that. There were many occasions where she tried to take

me to an empty room during my work or isolate me from others with intentions of sexual

misconduct.

**ANSWER:**  Porter denies the allegations in Paragraph 5.

6.      Also she was threatening me to throw me out Hospital if I will be ignoring her personal

matters, or refuse to go out with her to the bar after work or be in the empty room with her.

**ANSWER:**  Porter denies the allegations in Paragraph 6.

7.      I could not take it anymore and decided to report Karen's behavior to HR I and also signed

sexual harassment form.

**ANSWER:**  Porter denies the allegations in Paragraph 7.

8.      After this complaint to HR, Karen Young and her best friend Michelle Hesse, who was an

assistant manager, began discriminating me even more. They would make fun of me. Now

on

-    "Russian husky", "Russian communist", "KGB agent" have become a normal practice for

the staff to call me;

-    They intensely started tracking every step I made;

-    They would not let me to take a lunch break, drink coffee or water on the floor, even go to

the bathroom; or go to my locker where I stored my prescribed by my doctor meds to take

them on time.

**ANSWER:**  Porter denies the allegations in Paragraph 8.

9.      Other employees were not even close to being monitored as I was. They were able to take
        brakes throughout the day, drink whatever beverages they wanted, sit down while taking a
        vital signs, unlike me. They were able to choose their own vacation dates, while I was left
        with leftover dates after everyone had chosen what they wanted.

**ANSWER:**  Porter denies the allegations in Paragraph 9.

10.     Next day I stopped by HR once again to report Karen to be continuously harassing me
        sexually. I've been feeling emotionally stressed down, helpless and shocked.

**ANSWER:**  Porter denies the allegations in Paragraph 10.

11.     HR specialist Cathy Cox promised me that she will take care of my complaints and file a
        harassment form signed by me.

**ANSWER:**  Porter denies the allegations in Paragraph 11.

12.     Soon, after Karen Young has been removed from the management position.

**ANSWER:**  Porter admits only that Karen Young was removed from her managerial position due
        to not meeting minimum educational qualifications pursuant to a restructuring of the floor's
        leadership but denies any relation to Plaintiff's alleged complaints and otherwise denies
        these allegations.

13.     When Jon Massey became our new manager, Michelle Hesse, Karen's best friend,
        remained holding assistant manager position. She was responsible for making work
        schedules. Discrimination against me has reached a new level.

**ANSWER:**  Porter admits that Michelle Hesse had certain scheduling responsibilities after Jon
        Massey became the manager. Porter otherwise denies the allegations in Paragraph 13.

14.    No CNAs was given more than 11 patients per shift, except for me. Michelle was forcing

me to take care of 16 patients and be a sitter simultaneously. However, it was against Porter

hospital's policy: According to the Porter Hospital's policy, maximum allowable number

of patients appointed to one given CNA cannot exceed 11 patients per shift; Also, being a

sitter, while caring for other patients was not allowed, according to the policy.

**ANSWER:**  Porter denies the allegations in Paragraph 14.

15.    I was opposing to accepting this schedule especially after one of the hospital's patient died

in the prior week, because he was left unattended by a sitter, who, in turn left him caring

for another patient. He was choked by the oxygen tube, wrapped around his neck. But

Michelle keep saying, "You are strong as Russian bear, you will handle that".

**ANSWER:**  Porter denies the alleged repeated statement by Michelle. With respect to the other

allegations in Paragraph 15, Porter lacks sufficient information to admit or deny them and

therefore denies them.

16.    Michelle was not letting me go on lunch some days. If she did, she would monitor me

weather I was on time going out for lunch or back from it (that was happening with nobody

else but me only). She was making fun of my accent frequently, adding that in Russia,

workers were not given breaks at all.

**ANSWER:**  Porter denies the allegations in Paragraph 16.

17.    Karen has not stopped harassing me. Whenever there was nobody around, she would stick

out her tongue, moving it from side to side, making a circle motions with her fingers around

her breast, insisting me to go out with her. I was refusing it, because I did not want to. The

only thing I wanted was to have good working relationship with her and others.

**ANSWER:** Porter denies the allegations in Paragraph 17.

**CLAIM TWO:**
**Age Discrimination in Employment Act, ADEA**

*Termination of employment, different terms and conditions of employment: sex, age*

18.     All previous allegations are incorporated hereby.

**ANSWER:** All previous responses are likewise incorporated.

19.     Plaintiff is in a protected class.

**ANSWER:** Paragraph 19 constitutes a legal conclusion to which no response is required.

20.     Ironically new CEO for CENTURA HEALTH was appointed and Jonathan Massy as our manager same time in 2017. Drastic changes in staffing, everyone had been noticed among CNAs in particular.

**ANSWER:** Admit that Peter Banko, CEO and Jonathan Massy both assumed their then-current leadership positions during 2017. The remaining allegations are not sufficiently clear and particular to be admitted or denied.

21.     Michelle mentioned that Jon intends to shrink the staff on the floor and does not want a secretary in the front desk anymore. Also she sad that he wants to replace floor staff to younger extended CNAs . Since they would be able in a front desk and still care for patients.

**ANSWER:** Porter denies that Jon said that he "wants to replace floor staff to younger extended CNAs" or that age formed any basis for any employment-related decisions regarding CNAs. The remaining allegations in paragraph 21 are vague, inaccurate, and/or misleading and are therefore also denied.

22.     Jon had transferred several senior CNAs, like Alethea Bowens to a virtual sitting position. About same another CNA, Buck Gale had quit, senior CNA Goluch Danuta was terminated, several young extended CNAs, ages between 19 and 25 stepped in on our floor.

**ANSWER:**  Porter denies that Jon had transferred several senior CNAs to a virtual sitting position and that Buck Gale had quite as alleged. Porter lacks sufficient information to admit or deny the remaining allegations and therefore denies them.

23.     Frequently Michelle kept on repeating that I should start looking for a job, like above mentioned CNAs, giving me 16-20 patients. I was not getting any assistance from new young CNAs, as team working environment implies. Instead of ordering food or drink for the patient, who would ring bed alarm often, while I am away busy with my other patients, they were just keep calling my pager .

**ANSWER:**  Porter lacks sufficient information to admit or deny the allegations in Paragraph 23 and therefore denies them.

24.     While I was approaching front desk to assist patient, I several times was witnessing how extended CNAs either played games on their personal phones ( though I was not allowed to have my personal phone with me at all time while I am on my shift.) or had their homework done(many were students), instead of doing what they are supposed to do, like helping patients when I am at my busiest .

**ANSWER:**  Porter lacks sufficient information to admit or deny the allegations in Paragraph 24 and therefore denies them.

25.     Jon and Michelle was always protective of young CNAs, saying that they can do whatever they want, if they finish their duties, which was never applied to me.

**ANSWER:**  Porter denies the allegations in Paragraph 25.

26.     Since I remained the only senior CNA on the floor, I constantly were asking Michelle to stop discriminating me and make young CNAs do their direct responsibilities. Alethea Bowens, the director, and even patients complained about their behavior to the manager and charge nurse.

**ANSWER:**  Porter denies the allegations in Paragraph 26.

27.     Karen kept sexually harassing me, Michelle and Jon kept discriminating me.

**ANSWER:**  Porter denies the allegations in Paragraph 27.

28.     In 2017, When Michelle assigned me 16 patients and being a sitter, she complained Jon, that I was not answering the phone and hiding from her, showing attitude. Based on Michelle's words, Jon, for the first time had given me bad performance review, ignoring all the positive reviews from my coworkers, patients.

**ANSWER:**  Porter admits that Michelle complained to Jon that Plaintiff was not answering the phone and hiding from her. Porter otherwise denies the allegations in Paragraph 28.

29.     He stated that all good reviews were coming from your friends, like Alethea Bowens, Danuta Goluch, Cody Smith. Yes we have had a good relationship at work, nothing more. And he was adding in a rude and aggressive manner "Do not argue this with me. I don't care what you say and don't go across...me, because I say so". "I don't understand a word you are saying", he kept mentioning my heavy Russian accent and mock me for it He had invalidated all the positive feedbacks that outweighed negative one. I was continually discriminated by him.

**ANSWER:**  Porter denies the allegations in Paragraph 29.

30.    In February 15, 2017 I tried to explain Jon what happened 3 days earlier and how immensely hard I was working on Feb. 12, 2017, when Michelle assigned me 16 patients and being a sitter, but he would not listen, saying you have broken English and further was ignoring me.

**ANSWER:**  With regard to what Plaintiff tried to explain, Porter lacks knowledge to admit or deny and therefore denies. Porter denies that Jon responded in the manner alleged.

31.    I asked Michelle in a presence of Alethea, if I could work as virtual sitter, but she replied "No", "because of your strong accent nobody will understand you, adding" You better of looking for another job already". Alethea was confused with that offensive answer as she has not been having an issues with my English all throughout almost 11 years of work with her.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 31.

32.    Then I asked Jon same request and sad "If Amy has a strong Spanish accent, why can't I work there. But his answer was that he is hiring young and less expensive CNAs to work in the front desk or in virtual sitting room. Also he would smile repeating, "Why cannot you just quit and find a new job".

**ANSWER:**  Porter denies the allegations in Paragraph 32.

33.    So Michelle kept on assigning me 18, 22 patients, prominently braking hospital's policy. I kept trying to get at least two assistants. Meanwhile many patients were neglected by RNs, who were not assisting their patients.

**ANSWER:**  Porter denies the allegations in Paragraph 33.

34.    While I assisting my patients, I was called to another room, where patient was soaked in urine and stool. No RN or extended CNA would come there once within six hours to clean up even after feeding through leaky tube. Or they ignored moving a patient from side to side every two hours. Patient just could not call or speak for help.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 34.

35.    Very exhausted I went to that patient to care for her. I also called nurse to assist me with moving that patient

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 35.

36.    No any warnings to RNs and extended CNAs however have been issued for this of serious incident

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 36.

37.    I reminded Jon, that because of my back injury at work in 2010 I had to be cautious in doing heavy lifting etc., especially having 22 patients, he would not listen and ignore it.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 37.

38.    The discrimination and harassment by management staff has not stopped at this point.

**ANSWER:**  Porter denies the allegations in Paragraph 38.

## CLAIM THREE:
## TITLE VII and Age Discrimination in Employment Act, ADEA

*Termination of employment, different terms and conditions of employment:*
*sex, national origin, age*

39.    All previous allegations are incorporated hereby.

**ANSWER:**  All responses are likewise incorporated.

40.    Plaintiff is in a protected class.

**ANSWER:**  This allegation constitutes a legal conclusion which requires no response.

41.    After my unjust performance evaluation, I went again to HR, specifically to the office of Deana Hernandez ( Senior HR generalist) to complain about abusing and  discriminating me at work, harassment, unfair treatment by my manager Jon Massey, Karen Young and charge nurse Michelle Hesse. I made a report, describing, how unhealthy, unwelcomed and hostile work environment has become on our floor, specifically for me, since Jon became a manager. Deana has recorded my claim about discrimination and harassment by above name people and everything I stated. Then I signed this document.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies the allegations in Paragraph 41.

42.    Next day Jon handed me a gift card in the amount of $10? I refused to accept it. Instead I kindly asked him for help to end discrimination and harassment against me. He, once again was stressed out how strong my Russian accent was and said that he does not have any more time to talk to me. It seemed liked Jon and Michelle simply did not care about improving the quality of care and safety for their patients on the floor.

**ANSWER:** Porter admits that Jon gave Plaintiff some form of acknowledgment along with a small monetary award. The remaining allegations in Paragraph 42 are denied.

43.    Discrimination was continued despite my complaints to HR.

**ANSWER:** Porter denies the allegations in Paragraph 43.

44.    Since no action has been taken towards this problem resolution, I decided to meet with Marta Paulson, director, complaining about everything what has been happening to me in recent months, including my unfair performance evaluation as a result of an incident, which occurred on 2/12/17 and 3/19/17. Marta promised me to care of all this to be prevented from happening it again. That was just a lie. Nothing has changed.

**ANSWER:** Porter denies the allegations in Paragraph 44.

45.    I was still getting 14-16 patients in a given day, as extended CNAs would only get 5. I had been calling embarrassing names as before, talking trash about me behind my back, treating as second class person, never been getting help from young CNAs to carry or move my patients.

**ANSWER:** Porter denies the allegations in Paragraph 45.

46.    I had struggled with completing computer test on time and asked Jon for help. But would not help me and became very mad at me.

**ANSWER:** Porter denies the allegations in Paragraph 46.

47.    Once again Karen tricked me to go check an empty room for "equipment", so she would quietly follow me and sexually harass me. That was making me embarrassed and angry. She was saying that she loves Russian women because of their big breasts.

**ANSWER:** Porter denies the allegations in Paragraph 47.

48.     I brought it up to Marta Poulson and Melissa, the manager assistant. And finally they give

her a warning but that did not stop Karen from sexually harassing me.

**ANSWER:**  Porter denies the allegations in Paragraph 48.

49.     And because they were not allowed to let me go to locker room to take my meds on time

for quite long period of time , that severely impacted my health.

**ANSWER:**  Porter denies the allegations in Paragraph 49.

50.     Also right about this time around, my mother, who leaves in Sacramento, CA was going

through leg amputation. I was very depressed about it. Jon new about that, however:

**ANSWER:**  Porter admits that Plaintiff claimed her mother was going through a leg amputation—

and was granted time off as a result. Porter lacks knowledge to admit or deny the remaining

allegations and therefore denies them.

## <u>CLAIM FOUR:</u>
## <u>TITLE VII and Age Discrimination in Employment Act, ADEA</u>

*Different terms and conditions of employment, termination of employment,*
*retaliation: sex national origin, age*

51.     All previous allegations are incorporated hereby.

**ANSWER:**  All responses are likewise incorporated.

52.     Plaintiff is a woman and in a protected class.

**ANSWER:**  This allegation constitutes a legal conclusion that requires no response.

53.     5/30/17 when I was taking a patient to dialysis. All of a sudden, Jon, very loud shouted

right behind my back and in front of my coworkers. "Hey! Where are you taking this

patient? You Crazy Russian. I stood frozen there, confused and frightened to death. I want

to see you in my office, he shouted. I could not move for a while but I realized that

something terrible must have happened. He was going to give me written warning for nothing.

**ANSWER:**  Porter denies that Jon shouted "You Crazy Russian," that he shouted, or that he was going to give her a written warning for  nothing. Regarding the remaining allegations, Porter lacks knowledge to admit or deny them and therefore denies them.

54.  One day Jon called me in his office and asked me to sign "new rules" for 3N surgical CNAs. I refused to sign because after reading it I felt discriminated again. This document stated that CNA have to be able fluently speak, read, write, understand written instruction in English, to have proficient grammar, spelling, ability to utilize computer and keyboarding skills. Since I remained the only immigrant on the floor, I felt discriminated and depressed. Once signed it Jon could easily fire me, like they did to Danuta Goluch, CNA with 25 years of experience on the 3N surgical. But Jon insisted 5 times, warning me, if I refused to sign he would have a disciplinary action against me.

**ANSWER:**  Porter admits that Plaintiff was asked to sign an updated job description at a certain point in time that contained as a minimum experience requirement the "ability to read, write, speak, and understand English" as well as "Basic computer skills." Porter lacks knowledge to admit or deny the remaining allegations and therefore denies them.

55.  The written warning (dated in June 1, 2017) given to me, was the first one ever, in 10 years. For what??? Just for patient's urine to be emptied on time? It was part of my job. I was not even been informed of a patient's urine to be retained, neither by the nurse, staff or anyone. Nobody on the floor has even mentioned this to me for 8 days.("Incident has occurred on 05/23/17. I had not hurt my patient, I did not do any harm to her, I did nothing to be

punished for especially, by Jon's written warning, as I knew he did it by purpose, to find a reason to fire me as he planned to do so after my complaints to HR about hostile work environment.

**ANSWER:**   With regard to the 5/23 incident referenced, Porter denies that Plaintiff was not informed that the urine was to be retained. Porter also denies that Jon was planning to fire Plaintiff or that he issued the written warning with the motives alleged. The remaining allegations Porter lacks sufficient knowledge to admit or deny and therefore denies.

56.    I tried to explain the whole situation, that it was not my fault, but he replied, "It is not Russia, here you have to do what patient requested." But my patient was mentally impaired at that time, she couldn't adequately make any decisions. He added:" If you don't like it go back to "Home". He meant back to Putin's Russia.

**ANSWER:**   Porter denies the allegations in Paragraph 56.

57.    Also he wrote false statement in the warning, things which never happened, he put wrong dates. Also Jon's cousin wrote false complaint about me in support him for allegations.

**ANSWER:**   Porter denies the allegations in Paragraph 57.

58.    06/13/17 I submitted grievance and discrimination form with Human Resources and HR initiated an ADR process as hospital's policy implied.

**ANSWER:**   Porter admits that Plaintiff initiated the ADR process on a certain date, after receiving a written warning, possibly 06/13/17, but otherwise denies the allegations.

59.    Until 08/30/17, I was not able to participate in my ADR due to my health condition.

**ANSWER:**   Porter lacks knowledge to admit or deny and therefore denies this allegation.

60.     Jon has left my FYI7 Compensation statement on the front desk. Anna Dudley located it

and was shocked, when she saw my pay rate which was $17.54. She shared this information

with me, Jon, another extended CNA Ortega Samantha in particular and other extended

CNAs. She told me "I only get paid $12.50, you are getting much more than us, it's not

fair, so you have to work more and harder and they all stopped helping me". They were

just doing their homework and play with their phones.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies this allegation.

**CLAIM FIVE:**
**Americans with Disabilities Act, ADAAA Discrimination**

*Different terms and conditions of employment, failure to accommodate disability,*
*termination of employment: national origin, disability, age*

61.     All previous allegations are incorporated hereby.

**ANSWER:**  All responses are likewise incorporated.

62.     My mother's leg amputation, constant manager's discrimination, Karen's sexual

harassment and bullying Jon's frequent yelling at me, abuse from the staff, including

Michelle Hesse: all of that caused an emotional distress. I started developing a terrible

migraine, anxiety and sleepless nights and fatigue. I was not able to give proper care to my

family upon returning home from work. After my days off I was feeling even more tired

and simply were forcing myself go to work.

**ANSWER:**  Porter denies any discrimination, sexual harassment, bullying, yelling, and abuse.

Porter lacks knowledge to admit or deny Plaintiff's allegations regarding her physical and

emotional state, etc., and therefore denies the remaining allegations.

63.   On 06/02/17 I had stress, terrible migraine and panic attack and my husband took me to my Physician's clinic. After hours of examinations, I've been diagnosed with panic attacks, major depression, anxiety. My doctor has prescribed me strong meds, therapy and hospitalization.

**ANSWER:** Porter lacks knowledge to admit or deny and therefore denies these allegations.

64.   09/06/17 I had another panic attack, so I called in sick on 09/07/17. On my sick day, Jon called my cell phone and left a message of an immediate meeting related to performance overview. My heart started pounding, elevating my blood pressure very high. My husband rushed me to the Parker Porter Hospital's Emergency Room.

**ANSWER:**  Porter admits that Plaintiff was absent from work on 09/07/17. Porter denies that Jon's voicemail was "related to performance overview." The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

65.   On 09/12/17 Jon called me again and left a message in very demanding manner. I called him right back asking him to remove me from schedule, because I had urgent appointment with my doctor. But he insisted me to have a performance evaluation meeting. I've had severe anxiety and was under strong meds, so I could not hold an important meeting with Jon that time.

**ANSWER:**  Porter denies that Jon's voicemail was demanding in an inappropriate or unkind manner. The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

66.     He was rising his voice at me over the phone although I was very sick. I replied that I would want to speak with Sondra Davis, VP of Centura's Human Resources first, because I was threatened to be fired soon for any little reason.

**ANSWER:**  Porter denies that Plaintiff was threatened to be fired soon for any little reason. The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

67.     Jon told me to bring a doctor's statement about my mental issues and signed a consent form from an occupational nurse before he could place me on the schedule. They asked me why I was sick? I explained because of my medications from anxiety and panic attacks. My doctor had to prescribe me more dosage. Nurse sad that I could return to work, but if my symptoms worsened, I will need to take FMLA or Short disability.

**ANSWER:**  Porter admits that Jon directed Plaintiff regarding compliance with Centura's relevant policies, requiring her to submit certain documentation to Occupational Health under the circumstances. The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

## CLAIM SIX:
## ADAAA Retaliation

*Different terms and conditions of employment, termination of employment, retaliation: disability*

68.     On the meeting with Deana Hernandes in her office on 08/14/17, when we were discussing FMLA leave for me and when she accused me of being liar and making up fake excuses to get FMLA, Ed Lowry (HR manage) was witnessing our conversation. He ignored my reaction and my health condition after I heard all that from Deana. He did not interfere or stop Deana from accusing me.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies these allegations.

69.     Instead, next day he sent me an email suggesting to start an ADR process ASAP. I was not able to come for meeting on 08/21/17 due to my panic attacks at work, caused by continued discrimination against me from Jon, Deana, Karen, even my coworkers, especially after my visit to HR on 08/14/17. Also Michelle has scheduled me three days in a row against my will. Although we have had a previous agreement with Martha, director, not to schedule me 3 days in a row without my consent, due my poor health condition.

**ANSWER:**  Porter denies that Plaintiff's alleged panic attacks at work were caused by continued discrimination against her. Porter admits that at a certain point in time, Ed Lowry and Plaintiff engaged in an email dialogue relating to the ADR process. Porter lacks knowledge to admit or deny and therefore denies the remaining allegations.

70.     08/21/17 Michelle started monitoring me through virtual camera. I found out that from virtual sitter . She called me on work telephone she said : " Be very careful, I instructed to record your activities while you are in the room with a patient". I became anxious, I started panicking as I knew that those cameras are not intended for monitoring employees, but patients. I brought it up to Ed Lowry by email.

**ANSWER:**  Porter denies the allegations in Paragraph 70.

71.     Also I mentioned again about my intention to complain about job discrimination, sexual harassment from Karen. But he replied that this are two separate issues.

**ANSWER:**  Porter denies the allegations in Paragraph 71.

72.     Next, Jon called me in his office, calling me Crazy Russian and threatened me to fire me, because I complaint about him to HR manager, Ed Lowry.

**ANSWER:**  Porter denies the allegations in Paragraph 72.

73.     On 08/25/17 I was sent by my RN to the 4N floor to get a diaper, manager of that floor refused to give me one, yelling at me currently, because of total retaliation throughout the hospital started by my managers.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies these allegations.

74.     On 08/30/17 I had an ADR meeting with Ed Lowery. He asked me what are my remedies were? I replied, that I could not work under Jon and Michelle's pressure anymore, because his constant discriminations against me, sexual harassment from Karen Young never stopped. So I'd like to be transferred either to another floor or to virtual sitter room.

**ANSWER:**  Porter admits that at some point Ed Lowry and Plaintiff did meet regarding the ADR and one of the topics covered was what relief she was requesting. The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

75.     He refused me for any accommodations

**ANSWER:**  Porter denies that an accommodation was requested within the meaning of the ADA, and Porter further denies that the outcome of this meeting was a simple denial of any accommodation.

76.     Ed Lowry has investigated a Jon's written warning. He agreed that the warning did not make sense, was unfairly given to you and that he intended to destroy it as soon as I sign a resolution form and shady agreement, which I did not understand.

**ANSWER:**  Porter denies the allegations in Paragraph 76 regarding Ed Lowry's behavior. Porter lacks knowledge to admit or deny and therefore denies Plaintiff's lack of understanding.

77.     I refused to sign anything, demanding for thorough investigating all allegations against me, help in investigation and prevention of all the discriminations, retaliation and harassment against me in future, help in accommodations. That were my remedies, I stated.

**ANSWER:**  Porter denies the allegations in Paragraph 77.

78.     He concluded then." I cannot help you" and forwarded ADR process to the next step, which was the meeting with  Centura 's VP of Human Resource.

**ANSWER:**  Porter admits that the ADR process was elevated to the VP of Human Resources. Porter denies that the allegations in Paragraph 78 fully and accurately reflect the communications referenced therein.

79.     She email me with the same question:" What are your remedies?" I repeated the same ones as I would tell Ed Lowry. That was the last conversation in an ADR process  before they fired me.

**ANSWER:**  Porter admits that Sondra David asked what relief she was requesting. Porter denies the remaining allegations.

**CLAIM SEVEN:**
**FMLA Interference**

*Termination of employment, FMLA interference*

80.     On 08/11/17 I was called Matrix, asking for FMLA. On 08/14/17 Deana called me into her office to ask a reason for my FMLA leave. Then she accused me of deception and fraud, accused me of making the story up to avoid an ADR process. I explained that I must go to my mother, as soon as possible, as she needed my help, after her leg was amputated.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies these allegations.

81.     However, Deana lied instead, about the fact that my mother's doctor did not sign the proper forms to request FMLA. He did, in fact, faxed all the supporting documents to request FMLA to the MATRIX on 08/14/17.

**ANSWER:**  Porter denies that Deana lied. Porter lacks knowledge to admit or deny and therefore denies the remaining allegations.

82.     I started crying, panic attack has started but she added that I have deserved a written warning. She kept on saying that she did not believe me about discrimination and harassment, abuse and bulling, also suggested me to quit my job.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies these allegations.

83.     08/19/17 I heard my coworkers were taking behind my back, calling me crazy Russian and Russian liar. I started crying and couldn't stop it. They were laughing and cursing me. Around 2:45 Pm, Charge nurse floated me to 5N floor, without letting me take a lunch break.

**ANSWER:**  Porter lacks knowledge to admit or deny and therefore denies these allegations.

84.     On 09/18/17 I called MATRIX many times to make sure they sent a form to my doctor to be signed. Matrix promised to us they would send it to him, no worries. But they never did. Because Matrix have been told by Jon to stretch out time. Matrix intentionally kept changing the dates, blaming for my doctor( same story as they did with my mom's FMLA). Employer and Matrix knew of my doctor's appointment date, which was 9/28/17 ( Where my doc would have signed an FMLA related form). So they fired me on 09/27/17, one day earlier, while being on suspension. On 09/29/17 Jon sent me termination letter, provided with an attachment with fabricated statement, false dates and false facts about me.

**ANSWER:** Porter denies that Jon told Matrix "to stretch out time," that he otherwise interfered with the operations of Matrix, that he sent the termination letter, and that the termination letter included fabricated statements, false dates, or false facts. Porter lacks knowledge to admit or deny and therefore denies the remaining allegations.

85.    In September 14, 2017 I experienced excessive migraine and visited my doctor. My symptoms had worsened so I needed more meds or higher dosage.

**ANSWER:** Porter lacks knowledge to admit or deny and therefore denies these allegations.

86.    On 09/15/17 when I was back to work, Jon took me in his office and asked about making day and time for performance evaluation. I ask Jon, "How come my previous manager, Jennifer wasn't urgent with my performance, when I had my back injured in 2010?" I had one two months past dead line, because she was very kind and told me not to worry about, take care of yourself, feel better first. He was furious called crazy Russian. My blood pressure went up, I could not breathe, I felt terrible head ache and my coworkers have taken me to ER on the first floor.

**ANSWER:** Porter denies that Jon called Plaintiff crazy Russian. Porter lacks knowledge to admit or deny the remaining allegations and therefore denies them.

87.    Deana called Michelle on 08/14/17 after our discussion and told her that I was pretending of being unhealthy, having panic attack. She suggested Michelle to remove me from work that day.

**ANSWER:** Porter lacks knowledge to admit or deny and therefore denies these allegations.

88.    When I came to work on 08/19/17, I called MATRIX to check the status on weather I was approved for FMLA but they denied. I was depressed and anxious from worrying. So I

called my mom to find out of what happened to a medical-approved form signed by her

doctor. She answered that her doctor has faxed the signed form several times to the number

provided by MATRIX. And he was confused why it was taking so long to approve FMLA.

**ANSWER:** Porter lacks knowledge to admit or deny and therefore denies these allegations.

89.     My mother's doctor faxed again the form to the number provided, but MATRIX stated that

they did not receive it. I knew for sure that was a lie ( I have a proof). They were stretching

time by purpose to exceed a dead line. Jon and Deana had an interference In MATRIX's

decision to deny FMLA request.

**ANSWER:** Porter denies Jon and Deana's involvement. Porter lacks knowledge to admit or deny

the remaining allegations and therefore denies them.

90.     I had an appointment with my doctor, scheduled on 09/28/17 and I told Jon:" I will ask my

doctor to sign FMLA form for my illness then". He became angry, yelled at me , called me

you crazy Russian and said that it's too late to play doctors and forms. I will fire you

because you refused to sign ADR and did not take a performance evaluation.

**ANSWER:** Porter denies these allegations.

91.     09/15/17 Jon was saying that we still have time anywhere from two weeks to one month to

do a performance evaluation.  However all of a sudden (like something extra ordinary

happened)  he has become furious and angry, insisting me to sign an ADR form. to do a

performance evaluation   ASAP, despite my poor health and mental  illness.

**ANSWER:** Porter admits that on 09/15/17 Jon mentioned wanting to complete a performance

evaluation. Porter denies that Plaintiff's characterization of Jon's reaction is complete and

accurate. Porter lacks knowledge to admit or deny the remaining allegations and therefore

denies them.

92.     10/19/17 I was denied an FMLA and short disability.

**ANSWER:** Porter admits the allegations in Paragraph 92.

**CLAIM EIGHT:**
**FMLA Retaliation**

*Termination of employment, retaliation, FMLA Interference*

93.     All previous allegations are incorporated hereby.

**ANSWER:** All previous responses are likewise incorporated.

94.     I called in sick on 9/16/17 because my anxiety had worsen.

**ANSWER:** Porter admits that Plaintiff missed work on 9/16/17. The remaining allegations Porter

lacks knowledge to admit or deny and therefore denies.

95.     On 09/18/17 I came to work, but Jon asked me to call Occupational Health Department to

clear up my eligibility to work. They sad I am good to go.

**ANSWER:** Porter admits these allegations.

96.     I had meeting with Jon, Ed Lowry, Deana, Marta Paulson. Deana said:" Tatyana, Why

don't you just quit and look for another job" then in front of everybody she started reading

my grievance about discrimination, harassment, abuse against me. Jon added that I lost my

CNA skills (that was not true) so we need more younger CNAs, mainly students. He kept

pointing on my strong Russian accent, I voiced that I was not comfortable working with

my manager, begging to properly accommodate me. Deana was calling me a liar again,

adding that if I cannot work with manager, then it is my problem and then I should quit and

leave. Why do we have to offer you an accommodation.

**ANSWER:**  Porter admits that a meeting occurred in which Jon, one or more HR representatives, and Martha Paulson participated. Porter denies the remaining allegations.

97.     They suspended my badge and sent me home. They instructed me not to call the manager or the staffing office. HR will call you. Right then I felt anxious, my heart started pounding, because my blood pressure exponentially went up, I could not breathe. Ed Lowry walked me to Emergency Room downstairs, third time within one week.

**ANSWER:**  Porter admits that Plaintiff's badge was removed. Porter denies that Plaintiff was given any of the instructions as alleged. The remaining allegations Porter lacks knowledge to admit or deny and therefore denies.

98.     After ER, I applied for a short term disability, as an ER doctor recommended. He also sent a note to my doctor requesting an appointment with him as soon as possible. The only available date was 09/28/17.

**ANSWER:**  Porter lacks knowledge to admit or deny these allegations and therefore denies them.

99.     09/19/17 Ed called me home, left a voicemail. I was not able to speak to anybody, instead I texted him saying that I am not feeling and needed to see doctor urgently. He examined me and wrote a letter to excuse me from work.

**ANSWER:**  Porter lacks knowledge to admit or deny these allegations and therefore denies them.

100.    On 9/22, 9/25 and 9/27 we were calling the HR, leaving a voicemail, no one returned my call. I was able to speak to Ed though on 09/25 telling him that I had a statements from my both doctors about my poor mental and Physical conditions, caused by hostile work environment and that how badly I needed either FMLA or short disability, which I deserved. He replied that is too late and hung up the phone.

**ANSWER:**  Porter lacks knowledge to admit or deny these allegations and therefore denies them.

101.   On 09/22/17 My husband and I went to Centura Health's corporate office to speak to Rachel Marenin , the HR specialist, complaining about my situation. They just gave me a hot line number, promised to have Sondra Davis to contact me but she never did.

**ANSWER:**  Porter lacks knowledge to admit or deny these allegations and therefore denies them.

102.   They fired me in an unprecedented manner. They did not even allow me take my belongings from my locker in the brake room. They did not pay while I been on suspension.

**ANSWER:**   Porter admits that her suspension ended up being without pay and that her employment at Porter was terminated. Porter denies that her termination was in an unprecedented manner. If she was not allowed to go to her locker to collect her belongings, then in accordance with standard practice, security would have collected her belongings and made them available to her in human resources.

103.   My employer has left me without any money and insurance but with bunch of medical bills. I have been without my strong medications for more than three months, which greatly impacted my already poor health due to Porter, I just could not afford them, I had no insurance. My family and I suffered a lot, we had no money to pay bills, I could not see my doctor for months. My mom suffered without my help, as she lost her leg and strength. I have been discriminated, harassed and abused badly by my employer. My former employer refused for FMLA due to my mom's illness. Then they made me physically emotionally and mentally ill and disabled (I've been diagnosed with PTSD).Porter has refused for FMLA for myself. Porter has denied a short disability for me. They refused for my accommodation. Hospital staff treated me as third class person, for my hard and honest

work for more 10 years on the same floor. Hospital kicked me out of hospital like a street dog, pursuing personal ambitions and thinking about corporate profit. I am confident that justice will prevail. God Bless America.

**ANSWER:**   Porter incorporates its previous responses with regard to the numerous redundant allegations in this paragraph. With regard to any unique allegations herein, Porter lacks knowledge to admit or deny them and therefore denies them.

## AFFIRMATIVE DEFENSES

Defendant does not waive any defenses not pled in this Answer and expressly reserves the right to later raise additional defenses whether or not related to information arising from discovery or otherwise.

Moreover, Defendant by stating its defenses, does not hereby assume any burden of proof that would otherwise rest with the Plaintiff.

1.      With respect to one or more of the claims, Plaintiff fails to state a claim upon which relief can be granted.

2.      Porter exercised reasonable care to prevent and promptly correct sexual harassment at Porter, and Plaintiff unreasonably failed to avail herself of the preventative or corrective opportunities provided by Porter. Her alleged sexual harassment did not result in any tangible adverse employment action. The Faragher-Ellerth defense therefore applies.

3.      Plaintiff comes with unclean hands.

4.      Plaintiff's claims are barred to the extent that any damages suffered by Plaintiff were caused by Plaintiff's own acts, omissions, contributory negligence, or unreasonable reliance,

or by the acts or omissions or negligence of one or more third parties, and not by any act or omission of Defendants.

5.      Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to mitigate damages.

6.      Defendant's employment decisions regarding or affecting Plaintiff were based upon lawful, legitimate, non-discriminatory, non-pretextual, and non-retaliatory business reasons.

7.      Defendant would have made the same employment decisions regarding or affecting plaintiff regardless of Plaintiff's allegedly protected status or activity, and regardless of any impermissible motive (the existence of which is expressly denied).

8.      All of Defendant's actions and inactions with respect to Plaintiff were for just and good cause, taken in good faith, without malice or reckless indifference, and with reasonable grounds to believe that it was not in violation of any state or federal law.

9.      Plaintiff's claims are barred in whole or in part to the extent that she relies upon alleged incidents or actions occurring outside of the applicable statute of limitations.

10.     To the extent that Plaintiff's claims are based on actions which she requested or to which she consented, or by waiver, her claims are barred.

11.     Plaintiff's claims may be barred by the doctrine of after-acquired evidence.

12.     Plaintiff's claims may be barred by failure to exhaust administrative remedies, including without limitation by failure to timely file an EEOC complaint regard some or all of the matters complained of and to adequately set forth all claims in her EEOC complaint.

13.     Plaintiff's claims may be barred by failure to exhaust internal administrative remedies.

14.    To the extent that Plaintiff requested a reasonable accommodation under the ADA (which is expressly denied), Plaintiff's alleged requested accommodation is not a "reasonable accommodation," Plaintiff failed to engage in the requisite interactive dialogue, and such accommodation would impose an undue hardship.

15.    Plaintiff's ADA claims are barred by her failure to control a controllable disability.

16.    Plaintiff's ADA claims are barred to the extent that her disability or any other factor rendered her unqualified for her position.

17.    The plaintiff failed to take all actions that are prerequisites to rights under the FMLA, including without limitation failure to communicate the specific medical need, provide appropriate documentation, and provide as much notice as feasible.

Respectfully submitted this 13th day of November, 2020.

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

*s/ M. Brian Sabey*
M. Brian Sabey
1512 Larimer Street, Suite 300, Denver, CO 80202
Telephone:  (720) 282-2025
briansabey@hallrender.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 13th day of November, 2020, a true and correct copy of the foregoing was filed via CM/ECF with service by electronic mail and U.S. Mail, postage prepaid, upon the following:

Tatyana Maskaeva
4996 S. Quintero Cir.
Aurora, CO 80015
303.909.0182
Sevryuga4996@gmail.com
*Pro Se Plaintiff*

*s/ Rebecca Gibson*
Rebecca Gibson, Legal Administrative Assistant

4813-2075-0289, v. 1